GEORGE M. MELCHER vs. OCEAN INSURANCE COMPANY.

*Chartered freight—where ship-owner's interest begins.*

The plaintiff chartered his vessel to sail from New York to San Francisco, thence with convenient dispatch to Callao, thence to the Chincha Islands, and there to take on a cargo of guano for Hamburgh or Rotterdam. The defendants, thereupon, caused the plaintiff to be 'insured, lost or not lost,' several sums respectively, on charter, primage, and property on board, 'at and from New York to San Francisco.' The vessel sailed in accordance with the charter and was wrecked between New York and San Francisco, and condemned and sold. In an action upon the policy, *Held,* That the plaintiff's interest in the guano charter, commenced when his vessel left New York for San Francisco, and that the defendants were liable; and the fact that the plaintiff had, also, with the knowledge of the defendants, chartered his vessel to others from New York to San Francisco, and effected an insurance thereon with another company, constitutes no defense, in the absence of any evidence that the defendants were injuriously affected thereby.

ON REPORT.

· ASSUMPSIT upon a policy of insurance dated March 23, 1864.

The ship 'C. S. Pennell,' being at New York, obtained a charter from New York to San Francisco, and effected an insurance thereon in the Washington Insurance Company.

Subsequently on Jan. 30, 1864, she obtained another charter from the Chincha Islands to Hamburg or Rotterdam.

The case has been before the court before. 59 Maine, 217.

The remaining facts sufficiently appear in the opinion.

*J. & E. M. Rand,* for the defendants.

In February, 1864, ship 'C. S. Pennell' is at New York, there obtains a charter from New York to San Francisco.

And also while at New York obtains a charter for a cargo of guano from Chincha Islands to Europe.

Latter charter declared that ship shall sail on or before June 1 to San Francisco, and thence to Callao and Chinchas.

A stipulation, or even permission that a ship go 3,000 miles out of her way, is unusual. But this ship had already taken a charter for San Francisco, and is permitted to execute it before going to Callao, or even sailing for that port.

Having obtained these two charters, plaintiff takes out two policies of insurance, one of which is sued in this action, by which defendants insure 'on charter, primage, etc., at and from New York to San Francisco.'

Ship loads with a full cargo for San Francisco sails, and is lost between New York and San Francisco.

First question is, what charter covered by this policy? Plaintiff says that it is not the one from New York to San Francisco, but that from Chinchas to Europe. And this court say that parol evidence is admissible to show what charter insured by this policy.

And plaintiff introduces evidence showing, as he says, that this policy covers, and was intended to cover, the guano charter.

Court will decide, from the evidence, which charter is covered.

If that from New York to San Francisco, plaintiff can recover any surplus not covered by the prior policy.

If court say policy was intended to cover guano charter from Chinchas to Europe, then we say that we are not liable, because policy never attached.

Remarkable provision in charter that ship go first to San Francisco, 5,000 miles beyond Callao, and then return there. And upon plaintiff's construction of policy, the insurance is of a remarkable and unusual character; insures from New York to San Francisco freight from Chinchas to Europe; does not cover any portion of the time, or any portion of the voyage in which the freight is to be actually earned.

Policy never attached, because ship never sailed upon the guano voyage, never sailed upon it, even in the most liberal legal sense,

never sailed an inch for the purpose of earning the guano freight, never sailed under the guano charter actually or legally.

A ship lying at A may be chartered for a voyage from B to C, the freight from B to C may be insured, and if vessel sails from A for B for the sole purpose of earning the freight from B to C, policy attaches; and if ship be lost before arriving at B, the insurers are liable on policy.

The principle is laid down, and the cases establishing it are all cited in 1 Pars. Ins. 169; 1 Phillips' Ins., § 335 (p. 178, 5th ed.); *Barber* v. *Flemming*, Law Rep. 5 Q. B. 59.

The ship must start for the sole purpose of performing that voyage and earning that freight; not for the purpose of performing a different voyage and earning a different freight.

Such are all the cases.

But here ship sailed from New York for San Francisco under a charter for San Francisco, to carry a cargo there, and to earn the freight upon it; had a full cargo for San Francisco, no other purpose.

After her arrival at San Francisco she had a further object; but while on her way to San Francisco, her sole purpose in pursuing that route was to execute her San Francisco charter, and to deliver an independent cargo there.

A ship cannot sail under and in the execution of two charters at the same time, any more than she can sail upon two voyages at the same time. One charter may follow another between foreign ports, and one voyage may follow another between foreign ports, but no ship can be in the process of executing more than one at the same time.

Plaintiff says that his other policy was on the freight from New York to San Francisco. He has probably received the amount due on that.

And can any case be found, where one recovered under the same casualty upon two different policies upon two different charters?

Whether sale of ship was justifiable, so as to make a total loss,

we submit to court upon the evidence.    *Walker* v. *Protection Co.*, 29 Maine, 317 ; *Pierce* v. *Ocean Co.*, 18 Pick. 83 ; *Prince* v. *Ocean Co.*, 40 Maine, 481 ; *Stephenson* v. *Piscat. Co.*, 54 Maine, 55.

If court should think plaintiff entitled to recover, case must be sent back to *nisi prius*, as this is not a valued policy, and amount depends upon further evidence, and two trustee processes pending.

*A. A. Strout*, for the plaintiff.

APPLETON, C. J.    On Jan. 30, 1864, the plaintiff, as master of the ship ' C. S. Pennell,' of which he was part owner, and as agent for the other owners, chartered her to Messrs. Schön & Co., and to Mutzenbecher Sons, merchants, and as agents of Messrs. Witte & Schutte, Lima, for the purpose of taking a guano cargo from the Chincha Islands, to Hamburg or Rotterdam.

It was provided by the charter-party, the ' C. S. Pennell' being then at New York, that 'the said vessel shall sail on or before June 1, 1864, to San Francisco, and thence proceed with all convenient dispatch to the port of Callao, Peru, where the captain shall immediately report his arrival to Messrs. Henry Witte & Schutte of Lima.'    The vessel was then to proceed to the Chincha Islands, there load with guano, and after completing her loading to proceed to Hamburg or to Rotterdam, etc.

The charter-party is an unit.    It is one contract.    It is, as between the parties to it, but one continuous voyage.    Its terms are such as the parties choose to enter into.    They are as binding, during its continuance, as to one portion of the chartered voyage as to another.

On March 23, 1864, the defendants issued to the plaintiff the policy in suit, in and by which they caused him ' to be insured, lost or not lost, sixty-five hundred dollars on charter, twenty-six hundred dollars on primage, and also fifteen hundred dollars as property on board ship " Chas. S. Pennell," at and from New York to San Francisco.'

The evidence satisfactorily shows that this policy was intended to cover the charter-party of Jan. 30, 1864.

On April 1, 1864, the plaintiff sailed for San Francisco, in accordance with the charter. On the voyage, in May following, the vessel was stranded on a coral reef, in longitude 38° 42' west, latitude 17° 18' south. After laying there some thirteen hours, she came off on a flood tide and was taken by the master to Rio Janeiro, when it being found, upon examination, impossible to repair her, she was, in accordance with the recommendation of the surveyors, sold at public auction. Proof of loss was duly made, but the defendants declined adjusting it, on the ground that the policy did not cover the guano charter.

The parties to the policy in suit had a right to make their own contracts. The policy might cover the whole, or a part only of the chartered voyage. The civil war then raging, the plaintiff perhaps deeming the danger from the rebel cruisers to be greatest from New York to San Francisco, effected an insurance on that portion of the voyage described in the charter-party.

By this charter-party, no freight was to be earned between New York and San Francisco, nor between San Francisco and the Chincha Islands. To give any effect to the policy, it must be regarded as upon the freight which would have been earned during the whole voyage, if the loss occurred during a portion of the voyage which was insured, otherwise that part of the policy which insures ' sixty-five hundred dollars on charter ' would practically be stricken out, and would be of no avail.

In *Davidson* v. *Willasey*, 1 M. & S., 313, a ship was chartered from Liverpool to Jamaica, there to take on board a full cargo for Liverpool, at the current rate of freight, to be paid one month from the discharge of her cargo at Liverpool; and the ship-owners effected a valued policy on the freight at and from Jamaica to her port of discharge in the United Kingdom; and the ship arrived at Jamaica, and, after taking on board one-half of her cargo, was lost by storm, the remainder of her cargo being on shore and ready to be shipped; held, that the assured was entitled to recover as for a total loss. ' The interest intended to be insured,' remarks Lord Ellenborough, C. J., ' was the freight which the assured would

have earned under the terms of the charter-party, if the voyage had not been stopped by the perils insured against, which has been held for upwards of twenty years past to be an insurable interest as freight.' In *Barber* v. *Fleming*, 5 Law Rep. Q. B. 59, which resembled the case at bar in all its essential particulars, Cockburn, C. J., says: 'It is a fallacy to say the freight is earned simply by bringing the cargo from the port of loading to the port of discharge; the freight is earned by the whole voyage, which it is necessary to make to fetch the cargo and bring it home.' But if the vessel is chartered for a circuitous voyage, and a policy is effected upon the chartered freight, the completion of the voyage is required to earn the freight; but if the voyage fails by reason of the perils insured against, the insured is entitled to recover, otherwise his policy would do him no good.

The law on this subject is very accurately stated by Mr. Justice Blackburn in *Barber* v. *Fleming*. 'I think,' he observed, 'as soon as the case is understood, it is very clear. It appears there is a policy of insurance made upon a voyage "from Bombay to Howland's Island and from thence to England;" that is the description of the voyage. The nature of the thing insured is "freight chartered or otherwise." So that upon the face of the policy there is a bargain between the insured and the underwriters which if, during that voyage, by one of the perils insured against, freight is lost, the underwriters should pay. . . . When a ship-owner has got a contract with another person under which he will earn freight, and has taken steps and incurred expense upon the voyage toward earning it, then his interest ceases to be a contingent thing, but became an inchoate interest, and is an interest which if afterwards destroyed by one of the perils insured against is lost and ought to be paid for by the underwriters.' Here the vessel had started upon the voyage as chartered, and a part of which was insured, with a cargo provided on its arrival at the Chincha Islands. The plaintiff's interest in the chartered freight had therefore commenced. The loss occurred during the portion of the voyage on which the insurance was effected.

The fact that there was a charter-party between the plaintiff

Melcher *v.* Ocean Insurance Company.

and others for a voyage from New York to San Francisco and an insurance thereon by another company, constitutes no defense, unless the liability of the defendants was thereby increased or injuriously affected. That there was to be freight from New York to San Francisco and the same was insured, was well known to the underwriters. The charter-party between the plaintiff and Schön and others, upon which the insurance in suit was effected, was binding in all its parts. It mattered not what liabilities the plaintiff might have incurred to others, he was bound by his contract with them to its full and entire performance. The underwriters cannot avail themselves of any contracts made by the plaintiff with others, when with a full knowledge of their existence they insured a specific charter and a specific risk. They assumed the risk for a portion of the chartered voyage for a consideration full and satisfactory. The plaintiff's interest attached the moment the vessel left New York on the chartered voyage, which the defendants insured. It is nothing to them that the vessel was earning freight, unless the risk was thereby increased, and that is not alleged. Most assuredly they cannot complain, when they well knew such was to be the case, and the policy was issued with such knowledge. Indeed, if the policy does not cover the risk as claimed, it covers nothing. The conclusion is irresistible that the defendants, with a full knowledge of all the facts relied upon in the way of defense, issued their policy in suit to protect the plaintiff from the very risk which has occurred.

The vessel being condemned and sold and the voyage abandoned, the defendants are liable for the insurance on the charter and on primage for $9,200.

Satisfactory proof of loss was made on 27th February, 1865, and the defendants' liability to pay, accrued according to the terms of the policy in sixty days thereafter.

Judgment for plaintiff for $9,200, with interest from April 28, 1865.

CUTTING, WALTON, DICKERSON, DANFORTH, and TAPLEY, JJ., concurred.